E-FILING

ORIGINAL FILED

ADR

JUL 18 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1  BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
   Alan R. Plutzik (Bar No. 077785)
2  Kathryn A. Schofield (Bar No. 202939)
   L. Timothy Fisher (Bar No. 191626)
3  2125 Oak Grove Road, Suite 120
   Walnut Creek, California  94598
4  Telephone: (925) 945-0200
   Facsimile:  (925) 0200
5
   SCHIFFRIN & BARROWAY LLP
6  Eric L. Zagar
   Sandra G. Smith
7  280 King of Prussia Road
   Radnor, PA  19087
8  Telephone:  (610) 667-7706

9  Attorneys for Plaintiff

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13  RICK TOPE, Derivatively on Behalf of Nominal    Case No.
    Defendant INTEGRATED SILICON
14  SOLUTION, INC.,                                 **SHAREHOLDER DERIVATIVE**
                                                    **COMPLAINT**
15                                  Plaintiff,

16       v.                                         C06 - 04387  PVT

17  JIMMY S.M. LEE, KONG YEU HAN, GARY
    L. FISCHER, PAUL JEI-ZEN SONG,
18  MICHAEL D. MCDONALD, THOMAS C.
    ENDICOTT, THOMAS C. DOCZY, PING K.
19  KO, LIP-BU TAN, HIDE L. TANIGAMI,
    BRUCE A. WOOLEY,
20
                                  Defendants,
21
            and
22
    INTEGRATED SILICON SOLUTION, INC.             **JURY TRIAL DEMANDED**
23
                          Nominal Defendant.
24

25

26

27

28
    _____
    SHAREHOLDER DERIVATIVE COMPLAINT
    CASE NO.
    48038

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Integrated Silicon Solution, Inc. ("ISSI" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.      In gross breach of their fiduciary duties as officers and/or directors of ISSI, the Individual Defendants (as defined herein) colluded with one another to:

   (a)      improperly backdate dozens of grants of ISSI stock options to ISSI Chief Executive Officer Jimmy S.M. Lee and several other ISSI executives, in violation of the Company's shareholder-approved stock option plans;

   (b)      improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

   (c)      improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

   (d)      produce and disseminate to ISSI shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.      As a result of the Individual Defendants' egregious misconduct, ISSI has sustained millions of dollars in damages, and Lee and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental

SHAREHOLDER DERIVATIVE COMPLAINT
48038

1

jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6.     Plaintiff, a citizen of the State of Nevada, is, and was at all relevant times, a shareholder of nominal defendant ISSI.

7.     Nominal defendant ISSI is a Delaware corporation with its principal executive offices located at 680 Almanor Avenue, Sunnyvale, California 94086.  According to its public filings, ISSI and its subsidiaries design, develop and market high performance static random access memory and nonvolatile memory integrated circuits.  The Company's memory devices are used in networking applications, telecommunications, personal computers, disk drives, data communications, office automation, instrumentation and consumer products.

8.     Defendant Jimmy S.M. Lee ("Lee") has served as the Company's Chairman, Chief Executive Officer and a director since he co-founded ISSI in October 1988. Lee has also served as President since November 2005, and as director of Integrated Silicon Solutions Taiwan since September 1990.  Upon information and belief, Lee is a citizen of the State of California.

9.     Defendant Kong Yeu Han ("Han") has served as the Company's Vice Chairman since May 2005 and as a director since August 2005.  Han co-founded ISSI and served as the Company's Executive Vice President from April 1995 to December 1998, as Vice President from December 1988 to March 1995, and as General Manager, ISSI-Taiwan from September 1990 to December 1998.  Upon information and belief, Han is a citizen of the State of California.

10.     Defendant Gary L. Fischer ("Fischer") has served as the Company's Acting Chief Financial Officer since November 2005, and as director since April 2001.  Fischer also served as the Company's President from April 2001 to November 2005, and as Chief Financial Officer from June 1993 to June 2001 and from November 2002 to November 2005.  Fischer also served as the Company's Chief Operating Officer from April 2001 to May 2005, as Executive Vice President from April 1995 to March 2001, and as Vice President from June 1993 to March 1995.  Upon information and belief, Fischer is a citizen of the State of California.

11.     Defendant Paul Jei-Zen Song ("Song") served as the company's Senior Vice President of Engineering from 2000 through 2004, and as Vice President of Engineering in 1999.  Upon information and belief, Song is a citizen of the State of California.

12.     Defendant Michael D. McDonald ("McDonald") served as the Company's Vice President and Chief Financial Officer from in or about 2001 to October 2002. McDonald also served as Chief Financial Officer and Secretary of the Company in 2001.  Upon information and belief, McDonald is a citizen of the State of California.

13.     Defendant Thomas C. Endicott ("Endicott") served as the Company's President and Chief Operating Officer from May 2000 until March 2001.  Upon information and belief, Endicott is a citizen of the State of California.

14.     Defendant Thomas C. Doczy ("Doczy") served as the Company's Senior Vice President of Sales and Marketing from 2000 to April 2001, and as the Vice President of Sales and Marketing from 1999 to 2000.  Upon information and belief, Doczy is a citizen of the State of California.

15.     Collectively, defendants Lee, Han, Fischer, C. C. Han, Hu, Song, McDonald, Endicott, and Doczy are referred to herein as the "Officer Defendants.'"

16.     Defendant Lip-Bu Tan ("Tan") has served a director of the Company since March 1990.  Tan has also served as a member of the Compensation Committee of the Board of Directors ("Compensation Committee") since 1996 and as a member of the Audit Committee of the Board of Directors ("Audit Committee") since 1997.  Upon information and belief, Tan is a citizen of the State of California.

---

SHAREHOLDER DERIVATIVE COMPLAINT                                                           3
48038

17.     Defendant Hide L. Tanigami ("Tanigami") has served as a director of the Company since December 1997. Tanigami has also served as a member of the Compensation Committee since 2001, and as a member of the Audit Committee since 2000. Upon information and belief, Tanigami is a citizen of the State of California.

18.     Collectively, defendants Tan and Tanigami are referred to herein as the "Compensation Committee Defendants."

19.     Defendant Bruce A. Wooley ("Wooley") has served as a director of the Company since September 2002. Wooley also served as a member of the Audit Committee since the beginning of fiscal year 2003. Upon information and belief, Wooley is a citizen of the State of California.

20.     Collectively, defendants Tan, Tanigami, and Wooley are referred to herein as the "Audit Committee Defendants."

21.     Collectively, the Officer Defendants, Compensation Committee Defendants, and Audit Committee Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

22.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

23.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

SHAREHOLDER DERIVATIVE COMPLAINT

48038

4

24.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)     exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

(c)     exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

(d)     exercise good faith in ensuring  that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

25.     The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

(1)     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)    devise and maintain a system of internal accounting controls sufficient to provide

reasonable assurances that –

(a)    transactions are executed in accordance with management's general or

specific authorization;

(b)    transactions are recorded as necessary to permit preparation of financial

statements in conformity with [GAAP].

26.    ISSI's Audit Committee Charter provides that the Audit Committee shall be

responsible for, among other things,

(a)    Periodically and to the extent appropriate under the circumstances, it may be

advisable for the Committee, with the assistance of the independent auditors

and/or management, to consider and review the following:

- Any significant changes required in the independent auditors' audit plan.

- The effect or potential effect of any accounting initiatives or similar

  accounting developments on the Company's financial statements.

- Any correspondence with regulators or governmental agencies and any

  employee complaints or published reports that raise material issues

  regarding the Company's financial statements or accounting policies.

- Other matters related to the conduct of the audit, which are to be

  communicated to the Committee under generally accepted auditing

  standards, applicable law and Nasdaq and/or SEC rules and regulations.

(b)    Discussing with the Company's independent auditors the matters required to

be discussed by Statement on Accounting Standard No. 61, as it may be

modified or supplemented;

(c)    In consultation with the independent auditors and management, consider and

review at the completion of the annual examinations and such other times as

the Committee may deem appropriate:

- The independent auditors' audit of the financial statements and their report

  thereon.

SHAREHOLDER DERIVATIVE COMPLAINT                                                    6
48038

- Any deficiency in, or suggested improvement to, the procedures or practices employed by the Company as reported by the independent auditors in their annual management letter.

(d) Reviewing and discussing with management, before filing with the SEC, the audited financial statements and Management's Discussion and Analysis in the Company's Annual Report on Form 10-K. Making a recommendation to the Board of Directors whether the audited financial statements should be included in the Company's Annual Report on Form 10-K;

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

27.   At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of ISSI and administered the Company's stock option plans.

28.   From 1995 to 2002, the Compensation Committee granted certain ISSI stock options to the Officer Defendants, as follows:

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|-------------------------|----------------|-------------------|
| Lee | 10/13/1995 | $26.00 | 33,000 |
|  | 11/8/1996 | $9.25 | 39,000 |
|  | 7/11/1997 | $8.00 | 36,000 |
|  | 10/12/1998 | $2.8125 | 13,390 |
|  | 12/2/1998 | $3.1562 | 133,000 |
|  | 10/18/1999 | $6.375 | 35,000 |
|  | 2/1/2000 | $13.8125 | 12,000 |
|  | 4/14/2000 | $18.5625 | 25,000 |
|  | 12/4/2000 | $8.0625 | 40,000 |
|  | 4/9/2001 | $11.30 | 8,750 |
|  | 10/2/2001 | $6.75 | 53,750 |
|  | 8/6/2002 | $4.56 | 18,462 |
| K. Y. Han | 10/13/1995 | $26.00 | 33,000 |
|  | 11/8/1996 | $9.25 | 34,000 |
|  | 7/11/1997 | $8.00 | 30,000 |

| | | | |
|---|---|---|---|
| | 10/12/1998 | $2.8125 | 12,075 |
| | 12/2/1998 | $3.1562 | 119,000 |
| Fischer | 10/13/1995 | $26.00 | 12,000 |
| | 11/8/1996 | $9.25 | 18,000 |
| | 7/11/1997 | $8.00 | 20,000 |
| | 10/12/1998 | $2.8125 | 4,750 |
| | 12/2/1998 | $3.1562 | 75,000 |
| | 3/29/1999 | $2.5630 | 15,000 |
| | 10/18/1999 | $6.375 | 10,000 |
| | 2/1/2000 | $13.8125 | 10,000 |
| | 4/14/2000 | $18.5625 | 12,000 |
| | 12/4/2000 | $8.0625 | 15,000 |
| | 4/9/2001 | $11.30 | 107,031 |
| | 10/2/2001 | $6.75 | 42,031 |
| | 8/6/2002 | $4.56 | 9,231 |
| Song | 10/12/1998 | $2.8125 | 18,544 |
| | 12/2/1998 | $3.1562 | 44,500 |
| | 3/29/1999 | $2.5630 | 15,000 |
| | 10/26/1999 | $5.875 | 12,000 |
| | 2/1/2000 | $13.8125 | 8,000 |
| | 4/14/2000 | $18.5625 | 9,000 |
| | 12/4/2000 | $8.0625 | 12,000 |
| | 4/9/2001 | $11.30 | 5,625 |
| | 10/2/2001 | $6.75 | 24,500 |
| | 8/6/2002 | $4.56 | 3,000 |
| McDonald | 10/2/2001 | $6.75 | 3,375 |
| | 8/6/2002 | $4.56 | 2,877 |
| Endicott | 5/26/2000 | $24.875 | 240,000 |
| | 12/4/2000 | $8.0625 | 35,000 |
| Doczy | 10/12/1998 | $2.8125 | 15,500 |
| | 12/2/1998 | $3.1562 | 78,000 |
| | 3/29/1999 | $2.5630 | 15,000 |
| | 10/26/1999 | $5.875 | 12,000 |
| | 2/1/2000 | $13.8125 | 7,000 |
| | 4/14/2000 | $18.5625 | 5,000 |
| | 12/4/2000 | $8.0625 | 12,000 |

29.   Pursuant to the terms of the Company's shareholder-approved stock option plans, the Board determines the exercise price of options to purchase shares of Common Stock at the time the options are granted.  However, excluding options issued to 10% Stockholders, the exercise price must not be less than 100% of the fair market value of the Common Stock on the date the

SHAREHOLDER DERIVATIVE COMPLAINT
48038

8

option is granted.  Generally, the fair market value shall be the closing sales price for such stock (or the closing bid, if no sales were reported) as quoted on the Nasdaq National Market on the last market trading day prior to the date of determination.

30.   Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

31.   Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

32.   In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in ISSI's stock price, as demonstrated in the following chart:

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 10/13/1995 | $26.00 | $37.25 | $31.37 | 20.6% |
| 11/8/1996 | $9.25 | $9.00 | $11.06 | 19.5% |
| 7/11/1997 | $8.00 | $8.34 | $9.81 | 22.6% |
| 10/12/1998 | $2.8125 | $4.44 | $3.78 | 34.5% |
| 12/2/1998 | $3.1562 | $4.00 | $3.69 | 16.7% |
| 3/29/1999 | $2.5630 | $2.87 | $2.75 | 7.4% |
| 10/18/1999 | $6.375 | $9.09 | $6.62 | 3.8% |
| 10/26/1999 | $5.875 | $6.94 | $7.00 | 19.1% |
| 2/1/2000 | $13.8125 | $18.19 | $15.88 | 14.9% |
| 4/14/2000 | $18.5625 | $29.31 | $30.06 | 61.9% |

| | | | | |
|---|---|---|---|---|
| 5/26/2000 | $24.875 | $29.44 | $39.69 | 59.5% |
| 12/4/2000 | $8.0625 | $11.25 | $10.69 | 32.5% |
| 4/9/2001 | $11.30 | $13.56 | $14.67 | 29.8% |
| 10/2/2001 | $6.75 | $13.05 | $9.99 | 48.0% |
| 8/6/2002 | $4.56 | $6.94 | $6.11 | 33.9% |
| 10/1/2003 | $9.80 | $12.58 | $13.91 | 41.9% |

33.    The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made.  Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of ISSI stock was lower than the market price on the actual grant dates.  This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

### Dissemination of False Financial Statements

34.    As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

(a)    violated the terms of the Company's shareholder-approved stock option plans;

(b)    violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

(c)    violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

(d)    produced and disseminated to ISSI shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

35.    The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

---

SHAREHOLDER DERIVATIVE COMPLAINT
48038

10

(a)   Form 10-K for the year ended September 30, 1996, filed with the SEC on December 21, 1996, and signed by defendant K. Y. Han;

(b)   Form 10-K405 for the year ended September 30, 1997, filed with the SEC on December 12, 1997, and signed by defendants Lee, K. Y. Han, Fischer, and Tan;

(c)   Form 10-K405 for the year ended September 30, 1998, filed with the SEC on December 16, 1998, and signed by defendants Lee, K. Y. Han, Fischer, Tan, and Tanigami;

(d)   Form 10-K405 for the year ended September 30, 1999, filed with the SEC on December 29, 1999, and signed by defendants Lee, Fischer, Tan, and Tanigami;

(e)   Form 10-K405 for the year ended September 30, 2000, filed with the SEC on December 19, 2000, and signed by defendants Lee, Endicott, Fischer, Tan, and Tanigami;

(f)   Form 10-K for the year ended September 30, 2001, filed with the SEC on December 17, 2001, and signed by defendants Lee, Fischer, McDonald, Tan and Tanigami;

(g)   Form 10-K for the year ended September 30, 2002, filed with the SEC on December 20, 2002, and signed by defendants Lee, Fischer, Tan, Tanigami and Wooley.

34.   Furthermore, from 1995 to 2002, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

(a)   disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

(b)   filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to the Officer Defendants.

37.   On March 18, 2006, *The Wall Street Journal* published an article under the headline "The Perfect Payday" that described similar stock option backdating practices by other companies, including Affiliated Computer Services, Inc. ("ACS"), KLA Group, Inc. ("KLA"), Comverse Technology, Inc. ("Comverse"), and Vitesse Semiconductor Corporation ("Vitesse"). With regard to ACS and its former Chief Executive Officer Jeffrey Rich, the *Journal* reported:

SHAREHOLDER DERIVATIVE COMPLAINT
48038

11

On a summer day in 2002, shares of Affiliated Computer Services Inc. sank to their lowest level in a year. Oddly, that was good news for Chief Executive Jeffrey Rich.

His annual grant of stock options was dated that day, entitling him to buy stock at that price for years. Had they been dated a week later, when the stock was 27% higher, they'd have been far less rewarding. It was the same through much of Mr. Rich's tenure: In a striking pattern, all six of his stock-option grants from 1995 to 2002 were dated just before a rise in the stock price, often at the bottom of a steep drop.

Just lucky? A Wall Street Journal analysis suggests the odds of this happening by chance are extraordinarily remote -- around one in 300 billion. The odds of winning the multistate Powerball lottery with a $1 ticket are one in 146 million.

Suspecting such patterns aren't due to chance, the Securities and Exchange Commission is examining whether some options carry favorable grant dates for a different reason: They were backdated.

38.     The odds that the pattern of fortuitously-timed stock option grants exhibited by ISSI is the result of chance are similar to, if not greater than, the one in several billion or more odds described by the *Wall Street Journal*. The actual reason for the extraordinary pattern exhibited by ISSI was that the Officer Defendants' stock options were improperly backdated, as alleged herein.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

39.     The Officer Defendants breached their fiduciary duties by:

(a)     colluding with the Compensation Committee Defendants to backdate stock option grants;

(b)     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

(c)     colluding with the other Individual Defendants to produce and disseminate to ISSI shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(d)     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

40.   The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

41.   The Compensation Committee Defendants breached their fiduciary duties by:

(a)   colluding with the Officer Defendants to backdate stock option grants;

(b)   colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

(c)   colluding with the other Individual Defendants to produce and disseminate to ISSI shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(d)   colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

42.   The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

43.   The Audit Committee Defendants breached their fiduciary duties by:

(a)   colluding with the Officer Defendants to violate GAAP and Section 162(m);

(b)   colluding with the other Individual Defendants to produce and disseminate to ISSI shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(c)   colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

44.     The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

45.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

46.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

47.     Plaintiff is an owner of ISSI common stock and was an owner of ISSI common stock at all times relevant hereto.

48.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

49.     As a result of the facts set forth herein, plaintiff has not made any demand on the ISSI Board of Directors to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

50.     The Board currently consists of seven directors: defendants Lee, Han, Fischer, Tan, Tanigami, and Wooley, and director Ping K. Ko.  The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

    (a)     Lee, Han, and Fischer, because they are directly interested in the improperly backdated stock option grants complained of herein;

    (b)     Tan and Tanigami, because as members of the Compensation Committee they directly participated in and approved the improper backdating of stock options, as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as

alleged herein, Tan and Tanigami have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

(c)    Tan, Tanigami, and Wooley, because as members of the Audit Committee they directly participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Tan, Tanigami, and Wooley have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

(d)    Lee, Han, Fischer, Tan, Tanigami, and Wooley, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Lee, Han, Fischer, Tan, Tanigami, and Wooley have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

51.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

52.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

53.    As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

54.    As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

(a)    colluding with the Compensation Committee Defendants to backdate stock option grants;

1     (b)     colluding with the Audit Committee Defendants to violate GAAP and Section

2             162(m);

3     (c)     colluding with the other Individual Defendants to produce and disseminate to ISSI

4             shareholders and the market false financial statements that improperly recorded and

5             accounted for the backdated option grants and concealed the improper backdating of

6             stock options; and

7     (d)     colluding with the other Individual Defendants to file false proxy statements and

8             false Form 4 filings in order to conceal the improper backdating of stock options.

9     55.     The Officer Defendants' foregoing misconduct was not, and could not have been, an

10    exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the

11    Officer Defendants at the expense of the Company.

12     56.     As alleged in detail herein, the Compensation Committee Defendants breached their

13    fiduciary duties by:

14     (a)     colluding with the Officer Defendants to backdate stock option grants;

15     (b)     colluding with the Officer Defendants and Audit Committee Defendants to violate

16             GAAP and Section 162(m);

17     (c)     colluding with the other Individual Defendants to produce and disseminate to ISSI

18             shareholders and the market false financial statements that improperly recorded and

19             accounted for the backdated option grants and concealed the improper backdating of

20             stock options; and

21     (d)     colluding with the other Individual Defendants to file false proxy statements and

22             false Form 4 filings in order to conceal the improper backdating of stock options.

23     57.     The Compensation Committee Defendants' foregoing misconduct was not, and

24    could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and

25    did, unduly benefit the Officer Defendants at the expense of the Company.

26     58.     As alleged in detail herein, the Audit Committee Defendants breached their

27    fiduciary duties by:

28     (a)     colluding with the Officer Defendants to violate GAAP and Section 162(m);

(b)     colluding with the other Individual Defendants to produce and disseminate to ISSI shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(c)     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

59.     The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

60.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

**COUNT II**

**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES**
**EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**

61.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

62.     Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

63.     The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of ISSI common stock.

64.     As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

---

SHAREHOLDER DERIVATIVE COMPLAINT                                                      17
48038

## COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT

65.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

66.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

67.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.     Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

/     /     /

/     /     /

---

SHAREHOLDER DERIVATIVE COMPLAINT
48038

18

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2          Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than

3    the named parties there is no such interest to report.

4                                          Respectfully submitted,

5    Dated:  July 18, 2006                 BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

6

7                                          _____
                                                        Kathryn A. Schofield
8

9                                          Alan R. Plutzik (Bar No. 077785)
                                           L. Timothy Fisher (Bar No. 191626)
10                                         2125 Oak Grove Road, Suite 120
                                           Walnut Creek, California  94598
11                                         Telephone:  (925) 945-0200
                                           Facsimile:  (925) 945-8792
12
                                           SCHIFFRIN & BARROWAY LLP
13                                         Eric L. Zagar
                                           Sandra G. Smith
14                                         280 King of Prussia Road
                                           Radnor, PA  19087
15                                         Telephone:  (610) 667-7706

16                                         *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

Jul 14 06 01:01p      Rick Tope                (702) 638-1206        p.2
          07/13/2006   13:45                                            NO.972  0004

## VERIFICATION

I, **Rick Tope** hereby verify that I have reviewed the Complaint and

authorized its filing and that the foregoing is true and correct to the best of my knowledge,

information and belief.

DATE: _7-14-06_                         _Rick Tope_

                                        **RICK TOPE**